IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TIMOTHY JOHNSON,

                Plaintiff,                Case No. 3:07 CV 211

-vs-

                                            <u>MEMORANDUM OPINION</u>

TERRY COLLINS, et al.,

                Defendant.

KATZ, J.

      This matter before the Court stems from a judgment the Court entered on May 3, 2007 as an Opinion and Order (Doc. 6) that dismissed Plaintiff's initial claims seeking monetary relief pursuant to 28 U.S.C. § 1915(e) and injunctive relief against defendants Terry Collins, Gary Sims, Frank Vloch, Keith Smith, Kevin Logan, Benjamin H. Danhoff, and Bill Bartlison, in their official capacities, as state employees. The Court ruled that only the present case against Defendant Warden Khelleh Konteh on Plaintiff's claims seeking injunctive relief should move forward and is the sole matter before this Court.

      Defendant Khelleh Konteh filed a motion for judgment on the pleadings and to stay discovery on March 17, 2008 (Doc. 39). Plaintiff Timothy Johnson filed a response to Defendant's motion on May 27, 2008 (Doc. 45). The sole issue before the Court is whether Defendant is immune from Plaintiff's claims pursuant to the Eleventh Amendment. This Court denies Defendant's motion for judgment on the pleadings and to stay discovery, concluding that in this particular case, immunity for Defendant is not appropriate.

**I.      Background[1]**

Plaintiff, a prisoner incarcerated and in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC") and placed at Madison Correctional Institution ("MadCI") in London, Ohio, brought this action against Defendant, the warden of Toledo Correctional Institution ("ToCI"), where Plaintiff was previously incarcerated.  Plaintiff's action is filed under 42 U.S.C. § 1983 for violations of his civil rights under the First and Fourteenth

---

[1]
The facts of the case, as described in this Court's memorandum opinion of May 3, 2007, are as follows:

> Mr. Johnson indicates that he practices the Rastafari religion founded in Jamaica.  He claims that as a Rastafari, he took a vow not to cut his hair and to allow it to grow in dreadlocks.  He further contends that when a Rasta is in public, he must cover his hair with a TAM.
> Mr. Johnson has been incarcerated in ToCI since December 27, 2005. He states that during orientation, he asked Warden Kelleh Konteh about accommodation of his beliefs. He indicates that Warden Konteh replied that Rastafari was not a religion. He claims he was also told he would not be permitted to keep his hair in dreadlocks or wear a TAM.
> Three days later, Mr. Johnson was walking to the cafeteria and encountered Deputy Warden Keith Smith. Mr. Johnson states he was told he would have to cut his dreadlocks. He contends that he tried to explain his vow to Mr. Smith but was nonetheless given a direct order to cut his hair. Mr. Johnson refused and was taken to the segregation unit.
> Mr. Johnson contacted Chaplain Frank Vloch on January 9, 2006 and received a pass to come to the Chaplain's office to discuss his situation. He claims that when he arrived, Warden Konteh was there. The Warden informed him that dreadlocks were not permitted at ToCI. He also argued to the Chaplain and Warden that Jewish and female inmates are permitted to wear their hair long. His arguments did not persuade the Warden. Mr. Johnson completed and submitted a "Request for Accommodation of Religious Practice" form. The accommodation was denied by Religious Services Administrator Gary Sims. Mr. Johnson states that he was given a second direct order to cut his hair. He claims he saw Warden Konteh in the cafeteria on September 20, 2006.  He states that the warden approached his table and greeted him with, "How are you doing Rastaman?" (Compl. at 4.) He states he was given a direct order to cut his dreadlocks.

Doc. 6 at 2.

Amendments, respectively, stemming from Defendant's denial of Plaintiff's request to grow his hair in dreadlocks as required by Plaintiff's Rastafarian religion.

Plaintiff alleges that, as an inmate at Mansfield Correctional Institution ("ManCI"), and then at Lebanon Correctional Institution ("LCI") which are mostly close security institutions, Plaintiff was permitted to grow dreadlocks. However, once transferred to ToCI, which is also a mostly close security institution, Defendant forced Plaintiff to cut his hair. Plaintiff's request while at MadCI (a minimun/medium security prison) for a temporary exemption to grow hair for religious reasons (Doc. 45, see Appendix A, Decision of the Religious Services Administrator ("RSA")) was granted by ODRC, and stated that at all times, save for washing and cleaning, his hair must be worn in a ponytail and/or braid style. For security reasons, dreadlocks were still prohibited. Plaintiff's aforementioned request on January 14, 2008 was pursuant to an April 12, 2007 ODRC change in the grooming code, Ohio Admin. Code 5120-9-25, which allows for religious-based exemptions to hair length and growth.

Plaintiff maintains that refusal of his right to grow shoulder-length dreadlocks, for security reasons is not sufficient cause, and specifically, Defendant is not immune because he knew that forcing Plaintiff to cut his hair violated his rights to exercise his religious beliefs freely. Defendant counters that he is immune in his official capacity from suit and is further entitled to qualified immunity as a government official performing discretionary functions.

## II. Standard of Review

After the pleadings are closed, Fed. R. Civ. P. 12(c) permits any party to move for judgment on the pleadings as long as trial is not delayed as a result. A 12(c) motion employs essentially the same standard as a 12(b)(6) motion. *Spivey v. Ohio*, 999 F.Supp. 987, 991 (N.D.

Ohio 1998); *United Food & Commer. Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 746 (6th Cir. 2004). Specifically, "a district court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) (quoting *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001)).

**III.    Discussion**

    **A.    Defendant is not entitled to immunity or qualified immunity because Plaintiff may be able to show a violation of federal law**.

The Eleventh Amendment bars suits against state officials sued in their official capacities seeking to enjoin acts in violation of constitutional and federal law. *Edelman v. Jordan*, 415 U.S. 651, 668-69 (1974). An exception exists for suits seeking equitable or declaratory relief against state officials when such action seeks prospective relief to end a continuing violation of federal law. *Carten v. Kent State Univ.*, 282 F.3d 391 (6th Cir. 2002). The exception is limited to allegations against officials acting in violation of federal rather than state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Lee v. W. Reserve Psychiatric Habilitation Ctr.*, 747 F.2d 1062 (6th Cir. 1984). "[W]here prospective relief is sought against individual state officers in a federal forum based on a federal right, the Eleventh Amendment, in most cases, is not a bar." *Carten*, 282 F.3d at 397 (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 276-77 (1997).

Additionally, the Supreme Court "generally provid[es] government officials performing discretionary functions with a qualified immunity, . . . as long as their actions could have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483

4

U.S. 635, 638 (1987). Such officials are presumed to be protected, and the "general rule" is almost a "guarantee of immunity." *Id.* at 639, 646 (citations omitted). The burden of disproving qualified immunity is on the plaintiff. *McCloud v. Testa*, 97 F.3d 1536, 1542 (6th Cir. 1996).

Plaintiff has satisfied both of these burdens enough to show good cause as to why Defendant's motion for judgment on the pleadings should be denied. The prospective relief being sought is injunctive relief enjoining the prison from prohibiting Plaintiff from growing shoulder-length dreadlocks. As noted above, in order to grant Defendant's motion at this stage, the Court would have to "determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Kottmyer*, 436 F.3d at 689. First, Plaintiff has established that *he may be able to show* that a constitutional violation of his religious freedom is present and ongoing. *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996) (citations omitted); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). Second, Plaintiff can show that this right was "clearly established." *Dickerson*, 101 F.3d at 1158. Finally, Plaintiff may be able to show that Defendant was "objectively unreasonable" in his insistence that Plaintiff be prohibited from growing his hair in dreadlocks, in light of the Supreme Court's interpretation of federal statutory law. *Id*.

The federal law alleged to have been and continuing to be violated (for immunity) and with which Defendant could not have thought his actions consistent (for qualified immunity) is the Religious Land Use and Incarcerated Persons Act ("RLUIPA" or "the Act"), as interpreted by the United States Supreme Court. Plaintiff argues that he has satisfied his burden of proof under the Act and has demonstrated that Defendant substantially burdened his core religious beliefs that by cutting his hair, viewed as sacred to the Rastafarian religion, Plaintiff was forced to break his

5

"vow Nazirite," which symbolizes his love and trust in God. Specifically, Plaintiff relies on Section 3 of RLUIPA, which provides, in relevant part, that "'no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution' unless the burden furthers 'a compelling governmental interest,' and does so by 'the least restrictive means.'" *Cutter v. Wilkinson*, 544 U.S. 709, 712 (2005) (*quoting* RLUIPA, 42 U.S.C. 2000cc-1(a)(1)-(2)). RLUIPA, however, does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Id.* at 722. Moreover, though, as other courts have noted, "prison officials 'cannot merely brandish the words 'security' and 'safety' and expect that their actions will automatically be' insulated from scrutiny." *Farrow v. Stanley*, 2005 U.S. Dist. LEXIS 24374, at 28 (D. N.H. Oct. 20, 2005) (quoting *Campos v. Coughlin*, 854 F.Supp. 194, 207 (S.D. N.Y. 1994)).

Initially, the Court recognizes that Plaintiff may be able to show that the maintenance of his hair is a valid part of his religious expression. "'The 'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts' . . . ." *Cutter*, 544 U.S. at 720 (quoting *Employment Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 877 (1990)). This is supported further by the ODRC's decision to change its grooming code to provide for a religious exception for hair grooming. The substantive issue, therefore, rests on the question of whether dreadlocks present a valid security threat and that a complete ban provides the least restrictive means to achieving that security interest. Defendant has not shown that it does. In fact, it is curious that Defendant has presented to this Court not a single specific security concern that justifies the prohibition on dreadlocks. Defendant limited argument in support of its motion to immunity and mootness without any discussion of security. *See* Doc. 39. As described above,

6

however, the immunity analysis considers whether a violation of federal law can be established by a plaintiff against a defendant. As such, this Court does not herein decide the merits of the case, but, using the standard set forth above, applies immunity analysis in light of the alleged violation of rights. Plaintiff here put Defendant on notice that the allegedly violated law was RLUIPA, *see* Doc. 1, 45, but Defendant replied by briefing only the issue of mootness, s*ee* Doc. 48.

Other prisons, including a similar prison in Ohio, recognize a prisoner's right to exercise religious expression through hair length and style. First, the federal government permits a less restrictive policy than that Defendant seeks to maintain. U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5230.05, 28 C.F.R. § 551.4 (available at http://bop.gov/DataSource/execute/dsPolicyLoc).

> (a) The Warden may not restrict hair length if the inmate keeps it neat and clean.
> (b) The Warden shall require an inmate with long hair to wear a cap or hair net when working in food service or where long hair could result in increased likelihood of work injury.
> (c) The Warden shall make available to an inmate hair care services which comply with applicable health and sanitation requirements.

*Id.* "For more than a decade, the Federal Bureau of Prisons has managed the largest correctional system in the Nation under the same heightened scrutiny standard as RLUIPA without compromising prison security . . . ." *Cutter*, 544 U.S. at 725 (*citing* Br. for United States at 24). Second, several state departments of corrections permit exceptions for religious expression. *See, e.g., Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir 2005); Col. Dep't of Corrections, Colo. Admin. Reg. 850-11(I): (IV)(A)(1)(d); Nev. Dep't of Corrections, Admin. Reg. 705.01(1.1). Third, Plaintiff justifiably questions how as an inmate at the ManCI, a close security institution, he was permitted to grow dreadlocks, but when bilaterally transferred to ToCI, a similar closed security institution, he was not afforded such a right.

7

For the reasons discussed above, Plaintiff may be able to show that Defendant, by adhering to an ongoing policy that restricts the freedom to maintain hair in a certain manner necessary to comply with religious beliefs and customs, may have and may continue to violated federal law. Therefore, the case falls within the exception established in *Carten* and *Pennhurst*, and Plaintiff may proceed with the case. *Carten*, 282. F.3d 391; *Pennhurst*, 465 U.S. at 106. *See Ex parte Young,* 209 U.S. 123 (1908).

### B. Plaintiff's claims are not moot.

Article III of the Constitution confines the powers of the federal courts to adjudication of "cases or controversies." U.S. Const. art. III, § 2; *Allen v. Wright*, 468 U.S. 737, 750 (1984). The mootness doctrine, a subset of the Article III justiciability requirements, demands a live case or controversy when a federal court hears a case. *Burke v. Barnes*, 479 U.S. 361, 363 (1987). Defendant maintains that any injunctive claims that Plaintiff raises are moot because: (a) the ODRC grooming code was changed to allow for religious-based exemptions; and (b) Plaintiff no longer is incarcerated at Defendant's prison.

There are three major exceptions to the mootness doctrine where a court will not deem a case moot. One that appears relevant in the present case is a "voluntary cessation" on the part of the defendant, which occurs where a defendant is acting wrongfully, but ceases to engage in such conduct once litigation has been threatened or commenced. *See generally, Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc*., 528 U.S. 167 (2000). For the purposes of this issue, the Court does not inquire into the reasons for Plaintiff's transfer to another prison facility, for it matters not – he remains in the same prison system about which he complained. Defendant was Warden of the prison in which Plaintiff's claim arose, and Plaintiff here complained against Defendant in the

8

official capacity of warden of the institution in which the prisoner was held.  Moreover, mootness principles do not apply here because Plaintiff alleges and may be able to demonstrate an ongoing violation of federal law, and as such, there is nothing "moot" about this case also continuing. Additionally, the ODRC's change in its grooming code did little to affect Plaintiff's claim because it did not allow hair grown in dreadlocks.  His request for dreadlocks was denied after the change. Therefore, because Plaintiff might be able to show an ongoing violation of federal law, the fact that Plaintiff has transferred prisons within the same prison system does not support a dismissal based on mootness.

This case is distinguishable from other cases in which transfer to another prison has rendered a prisoner's claims moot, because Plaintiff in this instance may be able to show a violation of his rights, and that the violation of his rights is on-going and continuing into his new prison within the same prison system. *See, e.g.*, *Mowatt v. Brown*, 902 F.2d 34 (6th Cir. 1990); *Tate v. Brown*, 902 F.2d 35 (6th Cir. 1990); *Howard v. Heffron*, 884 F.2d 1392 (6th Cir. 1989). Those unreported cases, with little if any discussion of the issue, relied on an Eleventh Circuit case, *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360 (11th Cir. 1984), in which a prisoner was transferred from a county prison to a state prison.  That case in turn relied on a previous case, *Dudley v. Steward*, 724 F.2d 1493 (11th Cir. 1984), which also dealt with transfer of a county prisoner to the state prison system.  In this case, Plaintiff's claims are not moot, because the violation is continuing, and he remains in the same prison system, just at a different location.

**IV. Conclusion**

For the reasons discussed herein, Defendant's motion for judgment on the pleadings and to stay discovery is hereby denied. (Doc. 39.)

IT IS SO ORDERED.

                                         s/ *David A. Katz*
                                         DAVID A. KATZ
                                         U. S. DISTRICT JUDGE