IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TIMOTHY JOHNSON,

                Plaintiff,           Case No. 3:07 CV 211

  -vs-

                                   <u>MEMORANDUM OPINION</u>

TERRY J. COLLINS, et al.,

                Defendant.

KATZ, J.

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Vernelis K. Armstrong (Doc. No. 89), and Plaintiff Timothy Johnson's ("Plaintiff") objections to the R&R (Doc. No. 96). The R&R recommends denial of Plaintiff's motions for: (1) injunctive relief (Doc. No. 57); (2) production of documents (Doc. No. 62); and (3) an order to proceed to trial (Doc. No. 75). The R&R further recommends that Defendant Warden Khelleh Konteh's ("Defendant") motion for summary judgment (Doc. No. 59) be granted and that the case be dismissed.

In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981), this Court has made a *de novo* determination of those of the Magistrate Judge's findings to which Plaintiff objects. For the reasons below, the Court adopts the R&R in full.

**I. Background**

This case was filed pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc. The facts of the case, as adopted from the Magistrate Judge's R&R of January 16, 2009, are as follows:

> Plaintiff was incarcerated at the Toledo Correctional Institution (ToCI ) when he filed his complaint on January 24, 2007. Subsequently, however, Plaintiff was incarcerated at Lebanon Correctional and Madison Correctional Institution

> (MCI) in London, Ohio. At his request, Plaintiff was relocated from MCI to Richland Correctional Institution (RCI) in Mansfield, Ohio (Doc. Nos. 59, 81, pg. 2,and 85, pg. 2).
>
> During Plaintiff's incarceration at ToCI, Defendant was the warden; however, Defendant is no longer the warden at ToCI but is north regional director responsible for security and operations for twenty-four prisons within the northern region of the Ohio Department of Rehabilitation and Correction (ODRC) (Doc. No. 59, pg. 2).
>
> Plaintiff adheres to the Rastafarian religion. Persons adhering to the Rastafarian tenets wear dreadlocks or interlocked ropes of hair which grow naturally and which are not to be shaved, cut or combed (Doc. No. 85, pg. 2). Plaintiff refused to cut his hair because he took a Nazarite vow as described in Numbers 6:5 (King James Version): "All the days of the vow of his separation there shall no rasor come upon his head until the days be fulfilled, in which he separateth himself unto the LORD, he shall be holy, and shall let the locks of the hair of his head grow."
>
> In public, Plaintiff covers his head with a tam. At a ToCI orientation, Plaintiff requested leave to wear dreadlocks. Apparently, Defendant advised him that Rastafarianism was not a religion and he could not wear a tam or dreadlocks. The deputy warden at ToCI reinforced Defendant's order, advising Plaintiff that he must cut his dreadlocks. Plaintiff refused, explaining that he had taken a vow to refrain from cutting his hair. The deputy warden was steadfast in his order and confined Plaintiff to the segregation unit.
>
> Plaintiff met with the chaplain and Defendant on January 9, 2006, to discuss his request for a religious accommodation. During the meeting Plaintiff argued that Jewish and female inmates are permitted to wear long hair. His argument was unpersuasive. Defendant again ordered that Plaintiff cut his hair. On September 7, 2007, Plaintiff applied for a religious accommodation to wear dreadlocks and a tam. The ToCI chaplain denied the request (Doc. No. 59, Defendant's Exhibit A, ¶ 14). Defendant affirmed the denial. On appeal to the Religious Services Administrator for all Ohio prisons, Gary Sims, Plaintiff was granted leave to wear a tam but denied the request to "grow" dreadlocks (Doc. No. 59, Defendant's Exhibit A, ¶ 12). Plaintiff's request for transfer to Richland Correctional Institution (RCI) in Mansfield, Ohio, was approved (Doc. No. 81, p. 2).

(Doc. No. 89 at 2-3).

Initially, Plaintiff sought injunctive relief and damages under 42 U.S.C. § 1983 for alleged violations of his right to freely exercise his religious beliefs and practices, and for being the victim of retaliation. During the course of this litigation, the Court has dismissed Plaintiff's claims against all defendants seeking monetary relief, and dismissed Plaintiff's claims for injunctive

relief against Defendants Collins, Sims, Vloch, Smith, Logan, Danhoff, and Bartlison. (Doc. No. 6).

On August 21, 2008, the remaining defendant, Khelleh Konteh, filed a motion for summary judgment. On January 16, 2009, the Magistrate Judge entered this R&R denying injunctive relief against Defendant Khelleh Konteh, and granting Defendant's motion for summary judgment. On March 26, 2009, Plaintiff filed objections to the R&R.

## II. Standard of Review

### A. Review of an R&R

Any party may object to a magistrate judge's proposed findings, recommendations, or report made pursuant to Fed. R. Civ. P. 72(b). The district judge to whom the case was assigned may review a report or specified proposed findings or recommendations of the magistrate judge, to which proper objection is made, and may accept, reject, or modify in whole or in part the findings or recommendations of the magistrate judge. Fed. R. Civ. P. 72.3(b). This Court has reviewed the findings of the Magistrate Judge *de novo*. *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981).

### B. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact."

*Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## III. Discussion

42 U.S.C. § 1983 provides, in relevant part: "Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured…." § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

A plaintiff bringing a claim under § 1983 must establish that the defendants acted under color of state law and that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or federal laws. *Haag v. Cuyahoga County*, 619 F. Supp. 262, 271 (N.D. Ohio 1985) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) aff'd, 798 F.2d 1414 (6th Cir. 1986)). No dispute exists that Defendant acted under color of state law. Accordingly, Plaintiff must present evidence that Defendant violated a constitutional right.

### A. The RLUIPA Standard

5

Under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C.§ 2000cc:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

In sum, Plaintiff can establish a violation by proving that the regulations imposed constitute a "substantial burden" on Plaintiff's religious exercise without a compelling governmental interest that is furthered through the least restrictive means. In determining whether an imposed regulation constitutes a "substantial burden," the Court looks to whether pressures are imposed on the inmate to significantly modify behavior and violate sincerely held religious beliefs. *Living Water Church of God v. Charter Township of Meridian,* 258 Fed.Appx. 729, 734 (6th Cir. 2007) (citing *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)).

Plaintiff argues that the prohibition against cutting his hair is part of his Nazarite vow, a component of Rastafari Faith, which functions as "a symbol of our love and trust in God." (Doc. No. 1). Unfortunately, this view is at odds with the Ohio Admin. Code § 5120-9-25(D), which places some restrictions on hair growth for inmates:

> Haircuts shall be provided as needed. Hair shall be clean, neatly trimmed, shall not extend over the ears or the shirt collar and shall not protrude more than three inches from the scalp. Braids may be worn subject to the limitations of this rule. The following hairstyles or facial hair are not permitted: Initials, symbols, dyes, multiple parts, hair disproportionately longer in one area than another (excluding natural baldness), weaves, and dreadlocks. Other hairstyles not specifically listed herein may be prohibited if they are determined to be either a threat to security or contrary to other legitimate penological concerns, as determined by the office of prisons.

Viewing the facts in the most favorable light to Plaintiff, the Court assumes that the grooming regulation substantially burdens Plaintiff's religious practice, and that the burdened belief is sincere. *Compare Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004), *with Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) ("Policy that intentionally puts significant pressure on inmates to abandon their religious beliefs by cutting their hair impose a substantial burden on their religious practices").  Given that the imposed regulation is considered substantially burdensome, Defendant must demonstrate that the regulation in question is in furtherance of a compelling governmental interest, and that the regulation imposed is the least restrictive method of furthering that government interest.

Defendant argues that contraband such as homemade weapons, wires, sharp objects, or drugs can be hidden within or under dreadlocks.  (Doc. No. 59 at 4). Defendant further contends that dreadlocks pose risks to institutional safety and security through the ability to disguise oneself and evade recognition in the event of escape.  (*Id.* at 4-5).  Dreadlocks also present hygiene concerns.  (*Id.*).  According to Defendant, correctional facilities also prohibit dreadlocks due to the dangerous nature of inspection, and the difficulty of discovering all concealed material therein. (*Id*. at 4)*.*  The close proximity required for proper inspection of dreadlocks creates tension between the inmates and correctional facility staff, and exposes the staff to the potential danger of being cut by objects hidden in the hair.  (*Id.* at 4-5).

A central consideration when imposing regulations within correctional institutions may be internal security.  *See Pell v. Procunier*, 417 U.S. 817, 826-267 (1974) (prohibition of prisoner initiated media interview deemed constititutional).  The state has a compelling interest in imposing regulations with respect to hair lengths and types due to serious safety considerations.

7

*See Diaz v. Collins*, 872 F. Supp. 353, 358 (E.D.Tex. 1994) (hair length regulation in correctional facility the least restrictive means to further a compelling state interest). "The ability of prison officials to quickly identify inmates and protect prison guards and inmates from hidden contraband are matters of paramount concern." *Phipps v. Parker*, 879 F. Supp. 734, 736 (W.D. Ky. 1995) (safety concerns requiring cutting of long hair sufficiently justified institutional policy). Prison security is considered a compelling state interest, and the determination of whether the regulation imposed furthers that interest by the least restrict means is entitled to substantial deference by the judiciary to institutional officials. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005).

Important prison objectives of safety cannot reasonably be maintained without the aforementioned regulation. Alternatives, such as individualized, detailed inspection of dreadlocks would impose dangerous burdens on prison officials and inmates unlikely to ensure the removal of all contraband. "The impact upon the prison resources as related to search procedures and the time spent on searching for contraband by staff is a serious consequence of invalidating the grooming regulation and undermines the interest of safety and security." *Williams v. Wilkinson*, No. 9107634 (N.D. Ohio May 16, 1996) (grooming regulation considered a compelling state interest). Therefore, the Court finds that the regulation imposed is the least restrictive means available and that Defendant has demonstrated the compelling state interest of internal security.

### B. Potential Versus Actual Danger

Plaintiff argues that the findings in the R&R demonstrate that he is treated differently than other prisoners as a result of his religious beliefs, which presents a colorable issue for trial that could entitle him relief. (Doc. No. 96 at 2-3). Specifically, Plaintiff argues that he is being

deprived of his federal rights as a result of "different" and "punitive" treatment because the Defendant has failed to demonstrate how the Plaintiff's exercise of his religious rights would *actually* implicate any security or safety concerns. *Id.*

Substantial deference is given to prison officials in terms of their discretion to impose regulations. *See Brown v. Johnson*, 743 F.2d 408, 413 (1984) (concluding that internal security was a sufficiently compelling state interest). In order to support regulations, prison officials need only demonstrate potential danger, not *actual* danger. *Id.* Here, Defendant describes the potential danger of inmates hiding contraband such as homemade weapons, wires, sharp objects, or drugs within or under dreadlocks. (Doc. No. 59 at 4). Defendant also expresses the potential for increased tension between inmates and prison officials as a result the inspection of inmate hair. (*Id.* at 4-5).

The Court finds that Defendant has sufficiently demonstrated potential danger. Plaintiff's argument that Defendant's motion for summary judgment should be denied due to Plaintiff's failure to describe *actual* danger rather than potential danger is without merit.

**C. Equal Protection**

*Pro se* pleadings are to be liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam). Plaintiff argues that he is being treated "differently" on account of membership in an identifiable group or class of prisoners. (Doc. No. 96 at 3). In order to establish an Equal Protection claim, a plaintiff must allege that: (1) the regulation is facially discriminatory; (2) the regulation is discriminatory in its application or establishes disparate treatment; or (3) the regulation is administered unequally by the defendants. *Wellmaker v. Dahill*, 836 F. Supp. 1375, 1385 (N.D. Ohio 1993) (hair regulation imposed not a violation of Equal

9

Protection). Plaintiff appears to allege that the regulation is discriminatory in its application or administered unequally and that "plaintiff is a member of a clearly identifiable group or class of prisoners made subject to a 'different' and clearly 'punitive' application of established policy." (Doc. No. 96 at 3).

"To support an equal protection claim, however, Plaintiff must provide more than a scintilla of evidence of discrimination in the enforcement of prison regulations." *Wellmaker*, 836 F. Supp. at 1385. Plaintiff contends only generally that other religious groups have been permitted to wear headgear or have longer hair. (Doc No. 1 at 3). However, Plaintiff fails to demonstrate any instances in which other inmates have been permitted to wear dreadlocks, and therefore fails to raise a genuine issue of material fact regarding equal protection. Defendant argues that there are substantial differences in terms of inspection with regard to long hair versus dreadlocks, and that Defendant lacks knowledge of any inmate who has been permitted to grow dreadlocks. (Doc. No. 59 at 5). The evidence provided by the Plaintiff, even viewed in the most favorable light to Plaintiff, is insufficient to demonstrate an Equal Protection violation.

### D. Retaliation Against the Exercise of First Amendment Rights

Plaintiff alleges that he is the victim of "systemic retaliation at the hands of defendant." (Doc. No. 96 at 3). In order to establish a cause of action for retaliation, a plaintiff must: (1) prove that the conduct which led to the retaliation was constitutionally protected; (2) show that the defendant took adverse action against the plaintiff; and (3) demonstrate a casual link between the exercising of the constitutional right and the adverse action taken. *Brown v. Crowley*, 312 F.3d 782, 787 (6th Cir. 2002).

The filing of a prison grievance is a constitutionally protected right. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (establishment of retaliation claim precluded summary judgment). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penalogical objectives of the correctional system." *Thaddeus-X v. Blatter*, 175 F.3d 378, 390 (6th Cir. 1999) (*quoting Pell*, 417 U.S. at 822). Action is sufficiently adverse when it "would deter a person of ordinary firmness from continuing to engage in that conduct." *Brown*, 312 F.3d at 789. Additionally, administrative segregation is considered sufficiently adverse for purposes of a retaliation claim. *Id.* Plaintiff contends that segregation was imposed as a result of his refusal to have his hair cut. Adverse action motivated at least partially by Plaintiff's protected conduct establishes a casual link between the constitutional right and the adverse action taken. *Id.*

Here, however, Plaintiff fails to sufficiently plead retaliation in response to the filing of the prison grievance. Plaintiff's complaint suggests that the grievance was filed only after the imposition of segregation, eliminating the casual link between the segregation and the grievance filing. (Doc. No. 1 at 9). Plaintiff contends that segregation was imposed as a result of his refusal to have his hair cut rather than the filing of the grievance, which, as stated above, is not a constitutionally guaranteed right of a prisoner. Internal security concerns including hidden contraband, ability to conceal appearance in the event of escape, and potential danger to both inmates and correctional facility officials establish legitimate penalogical concerns at odds with Plaintiff's First Amendment retaliation claim. Even viewing the evidence in the most favorable light to Plaintiff, the pleadings set forth fail to adequately establish a retaliation claim.

**E. Injunctive Relief, Production of Documents, and for Order to Proceed to Trial**

Although Plaintiff has not specifically objected to the Magistrate Judge's recommendations that Plaintiff's motion for injunctive relief (Doc. No. 57), motion for production of documents (Doc. No. 62), and motion for order to proceed to trial (Doc. No. 75) be denied, the Court is cognizant of the Magistrate Judge's rulings and adopts the recommendations therein. Plaintiff's motions for injunctive relief and motion for order to proceed to trial are denied as moot, and Plaintiff's motion for production of documents is denied due to lack of relevancy.

**IV. Conclusion**

For the above stated reasons, the Court adopts the Magistrate Judge's R&R in full. (Doc. No. 89). Defendant's motion for summary judgment is granted. (Doc. No. 59). Plaintiff's motions for injunctive relief (Doc. No. 57), production of documents (Doc. No. 62), and motion for order to proceed to trial (Doc. No. 75) are denied as moot.

IT IS SO ORDERED.

                                                                    s/ *David A. Katz*
                                                                    DAVID A. KATZ
                                                                    U. S. DISTRICT JUDGE